## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## EL PASO DIVISION

| | |
|---|---|
| **BRANDON CALLIER,** §<br>§ | |
| **Plaintiff,** §<br>§ | |
| **v.** § | **EP-23-cv-00265-KC** |
| §<br>**REPTAR MARKETING LLC,** a Florida Limited §<br>Liability Company and **RONALD LIDDELL** § | |
| §<br>**Defendant.** §<br>§ | |

## PLAINTIFF'S FIRST AMENDED COMPLAINT

COMES NOW PLAINTIFF BRANDON CALLIER with his First Amended

Complaint and will allege and show as follows.

### PARTIES

1.     Plaintiff BRANDON CALLIER ("Plaintiff") is a natural person, resident of the Western

District of Texas, and was present in Texas for all calls, in this case in El Paso County, Texas.

2.     Defendant REPTAR MARKETING ("Reptar") is a Limited liability Company organized

and existing under the laws of Florida with a principal address of 335 Linton Boulevard, #1962,

Delray Beach, Florida 33483.  Reptar can be served via registered agent Ronald Liddell at the

same address.  This is a virtual address and cannot be served.  Under Florida Statues

48.031(6)(a) service can be executed by leaving a copy of the summons and Complaint with the

person in charge of the virtual mailbox or virtual office.

3.     Defendant RONALD A LIDDELL ("Liddell") is a natural person, resident of Florida,

principal officer of Reptar Marketing LLC, personally participated in the phone calls alleged

herein, and can be served at 335 Linton Boulevard #1692, Delray Beach, Florida 33483.

Congress Avenue is a virtual office with no physical presence.   Under Florida Statues 48.031(6)(a) service can be executed by leaving a copy of the summons and Complaint with the person in charge of the virtual mailbox or virtual office.

4.     Non-named party TEK VENTURES, LLC d/b/a PROVIDENT SOLUTIONS ("Provident") is a limited liability company organized and existing under the laws of California. Defendants Reptar and Liddell made phone calls on behalf of Provident.

5.     Non-named party ERIC PETERSON ("Peterson") is an officer of Provident and the party that informed Plaintiff Reptar Marketing made the phone calls on behalf of Provident.

6.     Non-named party FOLLOW MY LEAD MARKETING, LLC ("FMLM") is a limited liability company organized and existing under the laws of Florida.  FMLM was a previous party to the Complaint.  FMLM informed Plaintiff Defendant Reptar made the phone calls at issue in Complaint EP-23-cv-265-KC.

7.     Non-named party FINANCIAL WARRANTY LLC ("Financial Warranty") is a limited liability company organized and existing under the laws of California.  Financial Warranty was a previous party to Complaint EP-23-cv-00174-KC.  Financial Warranty informed Plaintiff Defendant Reptar made the phone calls at issue in Complaint EP-23-cv-00174-KC.

## JURISDICTION AND VENUE

8.     Jurisdiction. This Court has federal-question subject matter jurisdiction over Plaintiff's TCPA claims pursuant to 28 U.S.C. § 1331 because the TCPA is a federal statute. *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012).

9.     This Court has specific personal jurisdiction over Defendant Reptar because Defendant Reptar purposefully availed itself to the State of Texas and to this District, and there is a sufficient relationship between Defendant Reptar's purposeful contacts with Texas and the

litigation.

      a.  Defendant Reptar targets Texas when marketing legal services and regularly conducts business in this District, including telephone solicitation.

      b.  Its agents sent calls to Plaintiff's El Paso area phone number with area code 915 to generate leads for Provident and  .

      c.  The purposeful calls injured Plaintiff in Texas, creating a causal link among Defendant Reptar, the forum, and the litigation that exceeds the non-causal affiliation that is sufficient to support personal specific jurisdiction. *See Ford Motor Co. v Mont. Eight Jud. Dist. Ct.*, 141 S. Ct. 1017 (2021).

10.    This Court has specific personal jurisdiction over Defendant Liddell because Defendant Liddell purposefully availed himself to the State of Texas and to this District, and there is a sufficient relationship between Defendant Liddell's purposeful contacts with Texas and the litigation.

      a.  Defendant Liddell personally directed the phone calls be placed into Texas when marketing legal services and regularly conducts business in this District, including telephone solicitation.

      b.  Defendant Liddell directed that call be sent to Plaintiff's El Paso area phone number with area code 915 to generate leads for Defendant Price Law.

      c.  The purposeful calls injured Plaintiff in Texas, creating a causal link among Defendant Liddell, the forum, and the litigation that exceeds the non-causal affiliation that is sufficient to support personal specific jurisdiction. *See Ford Motor Co. v Mont. Eight Jud. Dist. Ct.*, 141 S. Ct. 1017 (2021).

11.    Venue.  Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1)-(2) because a

substantial part of the events giving rise to the claims—the calls and sale of goods and services directed at Texas residents, including the Plaintiff—occurred in this District and because the Plaintiff resides in this District.  Residing in the Western District of Texas when Plaintiff received a substantial if not every single phone call from Defendants that is the subject matter of this lawsuit.

12.     This Court has venue over Defendants because the phone calls at issue were sent by or on behalf of the above-named Defendants to Plaintiff, a Texas resident

## THE TELEPHONE CONSUMER PROTECTION ACT
## OF 1991, 47 U.S.C. § 227

13.     In 1991, Congress enacted the TCPA to restrict the use of sophisticated telemarketing equipment that could target millions of consumers *en masse*.  Congress found that these calls were not only a nuisance and an invasion of privacy to consumers specifically but were also a threat to interstate commerce generally.  *See* S. Rep. No. 102-178, at 2-3 (1991), as reprinted in 1991 U.S.C.C.A.N. 1968, 1969-71.

14.     The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system ('ATDS") or an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii).

15.     The TCPA makes it unlawful "to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes, is made solely pursuant to the collection of a debt owed to or guaranteed by the United States or is exempted by rule or order" of the Federal Communication Commission ("FCC"). 47 U.S.C. § 227(b)(1)(B).

16.     The TCPA provides a private cause of action to persons who receive calls in violation of § 227(b). 47 U.S.C. § 227(b)(3).

17.     Separately, the TCPA bans telemarketing calls without a do-not-call policy available upon demand. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(d)(1).[1]

18.     The TCPA provides a private cause of action to persons who receive calls in violation of § 227(c) or a regulation promulgated thereunder. 47 U.S.C. § 227(c)(5).

19.     According to findings of the FCC, the agency vested by Congress with authority to issue regulations implementing the TCPA, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls and can be costly and inconvenient.

20.     The FCC also recognizes that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used." *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014, 14115 ¶ 165 (2003).

21.     The FCC requires "prior express written consent" for all autodialed or prerecorded telemarketing robocalls to wireless numbers and residential lines.  In particular:[A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer:  (1) received clear and conspicuous disclosure of the consequences of providing the requested consent, *i.e.*, that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates. In addition, the written agreement must be obtained without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.

22.     *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*,

---

[1] *See* Code of Federal Regulations, Title 47, Parts 40 to 60, at 425 (2017) (codifying a June 26, 2003 FCC order).

27 FCC Rcd. 1830, 1844 ¶ 33 (2012) (footnote and internal quotation marks omitted). FCC

regulations "generally establish that the party on whose behalf a solicitation is made bears

ultimate responsibility for any violations." *In the Matter of Rules and Regulations Implementing*

*the Tel. Consumer Prot. Act of 1991*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

23.     The FCC confirmed this principle in 2013, when it explained that "a seller … may be

held vicariously liable under federal common law principles of agency for violations of either

section 227(b) or section 227(c) that are committed by third-party telemarketers." *In the Matter*

*of the Joint Petition Filed by Dish Network, LLC*, 28 FCC Rcd. 6574, 6574 ¶ 1 (2013).

24.     Under the TCPA, a text message is a call. *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d

946, 951 – 52 (9th Cir. 2009).

25.     A corporate officer involved in the telemarketing at issue may be personally liable under

the TCPA. *E.g.*, *Jackson Five Star Catering, Inc. v. Beason*, Case No. 10-10010, 2013 U.S. Dist.

LEXIS 159985, at *10 (E.D. Mich. Nov. 8, 2013) ("[M]any courts have held that corporate

actors can be individually liable for violating the TCPA where they had direct, personal

participation in or personally authorized the conduct found to have violated the statute." (internal

quotation marks omitted)); *Maryland v. Universal Elections*, 787 F. Supp. 2d 408, 415 – 16 (D.

Md. 2011) ("If an individual acting on behalf of a corporation could avoid individual liability,

the TCPA would lose much of its force.").

## FACTUAL ALLEGATIONS

26.     Plaintiff personally and successfully registered his phone number ending in 4604 to the

National Do-Not-Call Registry ("DNC") in December 2007.

27.     Plaintiff did not consent to any of the phone calls alleged herein.

28.     Each and every phone call at issue in this Complaint is a solicitation phone call marketing

debt relief.

29.    On April 28, 2023, Plaintiff filed Complaint number EP-23-cv-00174-KC in the Western

District of Texas alleging TCPA violations by Price Law Group and Financial Warranty LLC.

30.    On or about August 8, 2023, Plaintiff was given an affidavit by Financial Warranty

informing Plaintiff the phone calls at issue in EP-23-cv-00174-KC were in fact made by

Defendant Reptar and not by Financial Warranty.  Financial Warranty informed Plaintiff these

phone calls were made pursuant to an agreement for solicitation phone calls between Reptar and

Financial Warranty.

31.    Each and every phone call at issue in this Complaint was made using a manufactured

caller identification that displayed a Texas area code to suggest the calls were being made from

Texas.

32.    Table A shows the phone calls sent to Plaintiff by Defendant Reptar for the benefit of

Financial Warranty.

TABLE A

| Number: | Date | Time | Caller ID | Notes |
|---|---|---|---|---|
| 1 | 06/10/2022 | 12:29 PM | 346-818-2658 | 36 sec phone call soliciting debt relief |
| 2 | 06/15/2022 | 2:30 PM | 469-809-4629 | Displayed Financial W on caller ID |
| 3 | 06/15/2022 | 4:15 PM | 469-481-1260 | Displayed Financial W on caller ID |
| 4 | 06/15/2022 | 4:16 PM | 469-587-6743 | Displayed Financial W on caller ID |
| 5 | 06/16/2022 | 10:33 AM | 832-219-6715 | Displayed Financial W on caller ID |
| 6 | 06/16/2022 | 11:55 AM | 832-219-7780 | 1 minute call.  Soliciting Debt relief |
| 7 | 06/16/2022 | 4:11 PM | 346-707-2470 | Displayed Financial W on caller ID |
| 8 | 06/27/2022 | 12:23 PM | 346-666-7297 | Displayed Financial W on caller ID |
| 9 | 06/27/2022 | 12:50 PM | 346-666-7297 | Displayed Financial W on caller ID |

| 10 | 06/27/2022 | 12:51 PM | 346-666-7297 | 43 sec phone call soliciting debt relief |
| 11 | 04/20/2023 | 1:50 PM | 915-265-0547 | Phone call after DNC |
| 12 | 04/21/2023 | 10:27 AM | 469-824-3627 | Phone call after DNC |
| 13 | 04/21/2023 | 11:15 AM | 346-248-4332 | Phone call after DNC |
| 14 | 04/24/2021 | 2:26 PM | 936-755-4652 | Sammie asking why I canceled. |

33.    Call #1.  On June 10, 2022, Plaintiff received a phone call that displayed 346-818-2658 on the caller identification.  Plaintiff's caller identification also displayed the name "Financial W."  Plaintiff answered the phone and after a delayed pause, the telemarketer began to solicit Plaintiff for debt relief.  The call disconnected after 36 seconds.

34.    Calls #2-4.  On June 15, 2022, Plaintiff received a total of three missed phone calls that displayed 469-809-4629, 469-481-1260, and 469-587-9743 on the caller identification."  The three June 15, 2022, phone calls all displayed "Financial W" on the caller identification.

35.    Call #5-7.  On June 16, 2022, Plaintiff received three additional phone calls that displayed 832-219-6715, 832-219-7780, and 346-707-2470 on the caller identification.  Plaintiff answered the phone call ending in 7780 and was solicited for debt relief services.  Plaintiff discontinued the call after one minute.

36.    Each of the phone calls in paragraph 29 displayed "Financial W" on Plaintiff's caller identification.

37.    Calls 8-10.  On June 27, 2022, Plaintiff received three phone calls that displayed 346-666-7297 on Plaintiff's caller identification.  Plaintiff answered the second and third of these calls and was solicited for debt relief services before Plaintiff discontinued the calls.  Each of these calls displayed the name "Financial W" on Plaintiff's caller identification.

38.    Call #11.  On April 20, 2023, Plaintiff received a phone call that displayed 915-265-0547

8

on the caller identification.  The caller identification also displayed the name "Financial W."

Plaintiff answered the phone and was greeted by a telemarketer who said his name was

"Rickey."  Rickey inquired about Plaintiff's debt load and solicited Plaintiff for debt relief.

39.     Rickey live-transferred Plaintiff his "account manager" who identified herself as

"Sammie from Financial Warranty."

40.     Sammie informed Plaintiff that an attorney would be working on Plaintiff's case.

Plaintiff asked for the attorney information and was informed by Sammie the attorney

information would be sent via email.  Sammie continued the solicitation before passing Plaintiff

off to her "Compliance Officer" Jose Morales.

41.     Jose Morales ("Morales") went over a series of compliance questions and then sent

Plaintiff a contract from Financial Warranty via email through DocuSign.

42.     Morales then sent Plaintiff an email containing a link to https://www.pricelawgroup.com

as the attorney Financial Warranty enrolls consumers with to eliminate debts.

43.     Plaintiff went through the process of enrolling in the debt elimination services in order to

find out who had placed eleven phone calls to Plaintiff from various phone numbers displaying

"Financial W" on the caller identification. a car warranty policy from Defendant for the sole

purpose of unearthing who had been making anonymous automated phone calls to Plaintiff.

44.     On April 20, 2023, the same day Plaintiff received the contract, Plaintiff sent an email to

info@financialwarranty.com to cancel the contract because Plaintiff was not in need of the

services.  The email stated:

> "Please cancel my contract with Financial Warranty.  Do not call again.  You can
> identify me with my name, phone number, and email address.  There is no reason
> to not honor my request to not be called again.
> Thank you,
>
> Brandon Callier

45.     Plaintiff has email read notification tracking enabled in his Gmail.  Plaintiff was able to see that on April 21, 2023, Plaintiff's email was opened a total of 10 times.

46.     Defendant Financial Warranty called Plaintiff a total of four times after receiving Plaintiff's request to not be called again.

47.     On April 24, 2023, Plaintiff received a phone call from Sammie asking Plaintiff why he had canceled the contract.  Sammie undoubtedly had knowledge of Plaintiff's contract cancel request and DNC request when she called Plaintiff.

48.     Each of the phone calls in Table A was placed to Plaintiff by Defendant Reptar.

49.     Table B shows the phone calls sent to Plaintiff by Defendant Reptar for the benefit of Tek Ventures dba Provident Solutions

TABLE B

| 1 | 06/17/2022 | 3:30 PM | 858-369-1378 | Tek Ventures dba Provident |
| 2 | 06/17/2022 | 3:31 PM | 858-369-1378 | Tek Ventures dba Provident |
| 3 | 06/21/2022 | 10:14 AM | 858-369-1378 | Tek Ventures dba Provident |
| 4 | 06/21/2022 | 10:14 AM | 858-369-1378 | Tek Ventures dba Provident |
| 5 | 06/22/2022 | 3:11 PM | 858-369-1378 | Tek Ventures dba Provident |
| 6 | 06/23/2022 | 10:25 AM | 858-369-1378 | Tek Ventures dba Provident |
| 7 | 06/23/2022 | 11:46 AM | 858-369-1378 | Tek Ventures dba Provident |
| 8 | 06/23/2022 | 11:47 AM | 858-369-1378 | Tek Ventures dba Provident |
| 9 | 06/23/2022 | 2:26 PM | 858-369-1378 | Tek Ventures dba Provident |
| 10 | 06/23/2022 | 2:27 PM | 858-369-1378 | Tek Ventures dba Provident |
| 11 | 06/23/2022 | 4:35 PM | 858-369-1378 | Tek Ventures dba Provident |
| 12 | 06/24/2022 | 9:24 AM | 858-369-1378 | Tek Ventures dba Provident |
| 13 | 06/24/2022 | 9:25 AM | 858-369-1378 | Tek Ventures dba Provident |

50.     Call #1.  On June 17, 2022, Plaintiff received the first call to his personal cell phone ending in 4604 from Defendant Reptar with 858-369-1378 displayed on Plaintiff's caller identification.   Plaintiff did not answer this call.

51.     Call #2.  On June 17, 2022, Plaintiff received a second phone call that displayed 858-369-1378 on the caller identification.  Plaintiff answered the phone and was briefly solicited for debt relief before Plaintiff hung up the phone.

52.     Calls # 3-4.  On June 21, 2023, Plaintiff received two missed phone calls that displayed 858-369-1378 on the caller identification.

53.     Call # 5. On June 22, 2022, Plaintiff received a phone call that displayed 858-369-1378 on the caller identification.

54.     Call #6.  On June 23, 2022, Plaintiff received a phone call that displayed 858-369-1378 on the caller identification.  Plaintiff answered the phone call and was solicited for debt relief. Plaintiff went through the process because Plaintiff had received six phone calls in the span of three business days and was annoyed with the constant calls.

55.     Plaintiff went through the process and was emailed a contract from Provident Solutions.

56.     None of the telemarketers Plaintiff spoke to accurately identified themselves or identified themselves as working for Defendant Reptar or calling on behalf of Provident Solutions.

57.     Calls 7-13.  Calls seven through thirteen were all missed calls ignored by Plaintiff.

58.     On March 24, 2023, Plaintiff sent a demand letter to Provident Solutions about the unauthorized phone calls.

59.     On July 6, 2023, Eric Peterson, a principal officer of Provident Solutions identified Follow My Lead Marketing as the originator of the phone calls.

60.     On July 14, 2023, Plaintiff filed Complaint EP-23-cv-00265-KC alleging TCPA violations by Follow My Lead Marketing, LLC ("FMLM"), and owners Autumn Miller and Anna LaSalle.

61.     On August 8, 2023, Follow My Lead Marketing, through their counsel informed Plaintiff it was in fact, Defendant Reptar that had placed the phone calls in Table B to Plaintiff pursuant to an agreement between FMLM and Defendant Reptar.

62.     On September 10, 2023, Plaintiff searched on the Texas Secretary of State website https://direct.sos.state.tx.us/telephone/telephonesearch.asp and did not find a valid Texas Solicitation Registration as required by Texas Business and Commerce Code 302.101 for either of the Defendants

63.     Defendants did not have a solicitation registration certificate on file with the Texas Secretary of State as required to make telephone solicitations to Texas residents. Plaintiff is a Texas resident and was located in El Paso, County Texas at all times during the calls at issue.

64.     Defendants participated in, facilitated, directed, authorized, knew of, or willfully ignored the unlawful telemarketing calls, while knowing facts that required a reasonable person to investigate further, and approved, and ratified the conduct of their employees, agents, and co-conspirators to engage in the false and misleading sales practices and unlawful solicitation calls.

65.     Plaintiff has limited data storage capacity on his cellular telephone. Incoming telemarketing calls consumed part of this capacity.

66.     No emergency necessitated the calls.

67.     Through information and belief, Defendant Reptar did not have a written do-not-call policy while it was sending Mr. Callier unsolicited calls.

68.     Through information and belief, Defendant Reptar did not train their agents who engaged

in telemarketing on the existence and use of any do-not-call list.

**INJURY, HARM, DAMAGES, AND ACTUAL DAMAGES**

**AS A RESULT OF THE CALLS**

69.     Defendants' calls harmed Plaintiff by causing the very harm that Congress sought to prevent—a "nuisance and invasion of privacy.

70.     Defendants' calls harmed Plaintiff by trespassing upon and interfering with Plaintiff's rights and interests in Plaintiff's cellular telephone.

71.     Defendants' calls harmed Plaintiff by intruding upon Plaintiff's seclusion.

72.     Plaintiff has been harmed, injured, and damaged by the calls including, but not limited to: reduced device storage space, reduced data plan usage, anger, frustration, invasion of privacy, and more frequent charging of my cell phone

**PERSONAL LIABILITY OF DEFENDANT LIDDELL**

73.     Defendant Liddell personally participated in the calls at issue because Defendant Liddell personally directed the phone calls to be sent to Texas residents with Texas area codes.

74.     Defendant Liddell is the principal officer of Defendant Reptar.

75.     Defendant Liddell closely holds Defendant Reptar is intimately involved in all decision-making and legal activities of Defendant Reptar.

76.     Defendant Liddell has direct and personal involvement in and ultimate control over every aspect of Defendant Reptar's wrongful conduct that violated the TCPA, and/or directly controlled and authorized this conduct.

77.     Defendant Liddell at all times relevant to this Complaint acting alone or in concert with others, formulated, directed, controlled, had the authority to control, or participated in the acts and practices set forth in this Complaint,

78.    There is precedent in the Western District for holding corporate officers personally liable

when they participate in the alleged actions:

> "If the officer directly participated in or authorized the statutory violation, even
> though acting on behalf of the corporation, he may be personally liable.  See
> *United States v Pollution Serv. Of Oswego, Inc*., 763 F.2d 133, 134-135 (2nd
> Cir.1985)
>
> The "well-settled" tort rule provides that "when corporate officers directly
> participate in or authorized the commission of a wrongful act, even if the act is
> done on behalf of the corporation, they may be personally liable."  *General Motos
> Acceptance Corp. v. Bates*, 954 F.2d 1081, 1085 (5th Cir. 1992).  The Fifth Circuit
> has elaborated that "the thrust of the general [tort] rule is that the officer to be
> held personally liable must have some direct, personal participation in the tort, as
> where the defendant was the 'guiding spirit' behind the wrongful conduct….or the
> 'central figure' in the challenged corporate activity."  *Mozingo v. Correct Mfg.
> Corp*., 752 F.2d 168, 174 (5th Cirt. 1985) (Citing *Escude Cruz v. Ortho
> Pharmaceutical Corp*., 619 F. 2d 902, 907 (1st Cir.1980)) (Citing *Texas v.
> American Blastfax, Inc*., 164 F. Supp. 2d 892 (W.D. Tex. 2001)
>
> Quoting Texas v. American Blastfax:
>
> The Court finds the above principles applicable to the TCPA that is, an officer
> may be personally liable under the TCPA if he had direct, personal participation
> in or personally authorized the conduct found to have violated the statute, and was
> not merely tangentially involved.  Individuals who directly (and here, knowingly
> and willfully) violate the TCPA should not escape liability solely because they are
> corporate officers.  As the State persuasive argues, to hold otherwise would allow
> the individual defendants to simply dissolve Blastfax, set-up a new shell
> corporation, and repeat their conduct.  Congress surely did not intend to permit
> such a result in passing the TCPA.
>
> To be clear, the Court finds Greg and Michael Horne were the "guiding spirits" an
> the "central figures" behind the TCPA violations.  They were the two persons
> who controlled all of Blastfax's day-to-day operations.  They both had direct,
> personal involvement in and ultimate control over every aspect of Blastfax's
> wrongful conduct that violate the TCPA, and/or directly controlled and authorized
> this conduct.  And they did so with their eyes and pocketbooks wide open.  After
> October 5, 2000, Greg and Michael Horne had good reason to believe they were
> running a business that violated the TCPA.  On February 9, 2001, they knew they
> were.  Yet they continued to direct their company to send unsolicited intrastate
> fax advertisements.  This is far more than a simple derivative liability case.
> Accordingly, the Court *899 holds defendants Greg and Michael Horne are
> jointly and severally liable with Defendant Blastfax, Inc., for all TCPA damages
> in this lawsuit."  Texas v. American Blastfax, Inc., 164 F. Supp. 2d 892 (W.D.

14

Tex. 2001).

79.     The Same Court held that corporate officers were also personally liable for DTPA

violations;

> The State contends Greg and Michael Horne are personally liable for any DTPA
> damages because they were solely responsible for the violating conduct…..For the
> same reasons discussed in finding the individual defendants personally liable
> under the TCPA, the Court agrees.  See, e.g., *Barclay v. Johnson*, 686 S.W.2d
> 334, 336-37 (Tex. Civ. App.-Houston [1ST Dist.] 1985, no writ) (finding personal
> liability for corporate officer in DTPA misrepresentation claim, based on general
> rule that "a corporate agent knowingly participating in a tortious of fraudulent act
> may be held individually liable, even though he performed the act as an agent for
> the corporation……Accordingly, the Court finds defendants American Blastfax,
> Inc., Greg Horne and Michael Horne are jointly and severally liable for $6,000 in
> damages for their violations of the DTPA." *Texas v. American Blastfax, Inc*., 164
> F. Supp. 2d 892 (W.D. Tex. 2001).

80.     Defendant Liddell is the manager and owner of Defendant Reptar and controls the day-

to-day operations of Reptar and directs his employees, agents, salespersons, and solicitors to

make TCPA-violating phone calls.

81.     Defendant Liddell is not merely a bystander.  He is the mastermind who schemed,

planned, directed, initiated, and controlled illegal and fraudulent behavior.

82.     Defendant Liddell is well aware their conduct violated the TCPA and refused to alter

their behavior.  Defendant Liddell is the sole director and officer of Defendant Reptar and the

only person with the power to make unlawful, fraudulent, and unethical behavior stop.

**Violations of the Texas Business and Commerce Code § 302.101**

83.     The actions of Defendants violated the Texas Business and Commerce Code 302.101 by

placing solicitation phone calls to a Texas resident without having a registration certificate and

bond on file with the Texas Secretary of State.

84.     Texas Business and Commerce Code § 302.101 provides a private right of action.  A

violation of Chapter 302 "is a false, misleading, or deceptive act or practice under Subchapter E,

15

Chapter 17" and is enforceable as such: "A public or private right or remedy prescribed by Subchapter E, Chapter 17, may be used to enforce [Chapter 302." Tex. Bus. & Com. Code § 302.303.

85.     The use or employment by any person of a false, misleading, or deceptive act or practice" causes "economic damages or damages for mental anguish." Tex. Bus. & Com. Code § 17.50.

86.     Texas Business and Commerce Code §302.101 states that a person (1) "may not make a telephone solicitation" (a) "from a location in [Texas]" or (b) "to a purchaser located in [Texas]," (2) "unless the [person] holds a registration certificate for the business location from which the telephone solicitation is made." Tex. Bus. & Com. Code § 302.101(a).

87.     Under Texas Business and Commerce Code § 302.302(a) Plaintiff is entitled to seek damages of up to $5000 per violation under §302.101.

88.     Under Texas Business and Commerce Code § 302.302(d) Plaintiff is entitled to all reasonable costs of prosecuting the case to include attorney's fees, deposition costs, investigation costs, and witness fees.

## CAUSES OF ACTION

## COUNT ONE

## Violation of the TCPA "Sales Call/DNC" Prohibition, 47 U.S.C. 227(c), and 47 C.F.R. § 64.1200(C)

## (Against All Defendants)

89.     Plaintiff incorporates the preceding paragraphs 1-88 as if fully set forth herein.

90.     The foregoing acts and omissions of Defendant Reptar and Defendant Liddell and/or their affiliates or agents constitute a violation of FCC regulations by making multiple telemarketing solicitations to a consumer on the National Do-Not-Call Registry within a 12-month period in violation of 47 C.F.R. § 64.1200(c)(2).

16

91.     Defendants Reptar and Liddell sent twenty-seven (27) phone calls to Plaintiff's private residential telephone number which was successfully registered on the National Do-Not-Call Registry more than thirty-one (31) days prior to the text messages, in violation of 47 U.S.C § 227(c)(3)(F), and 47 C.F.R. § 64.1200(c)(2).

92.     Plaintiff was statutorily damaged at least twenty-seven (27) times under 47 U.S.C. § 227(c)(3)(F) by Defendants' calls described above, in the amount of $500 per automated text message.

93.     Plaintiff is entitled to an award of at least $500 in damages for each such violation.  47 U.S.C. § 227(c)(5)(B).

94.     Plaintiff is entitled to an award up to $1,500 in damages for each knowing or willful violation of 47 U.S.C. § 227(c)(3)(F)

## COUNT TWO

### Violations of The Texas Business and Commerce Code 302.101

### (Against All Defendants)

95.     Plaintiff incorporates the preceding paragraphs 1-88 as if fully set forth herein

96.     The foregoing acts and omissions of Defendants Reptar and Liddell and/or their affiliates or agents constitute multiple violations of the **Texas Business and Commerce Code 302.101**, by making non-registered solicitation calls to Plaintiff's cellular telephone number without his prior express written consent.

97.     Plaintiff is entitled to an award of up to $5,000 in damages for each such knowing or willful violation. **Texas Business and Commerce Code 302.302(a)**.

98.     Plaintiff is entitled to an award of all reasonable costs of prosecuting the action including court costs, investigation costs, deposition expenses, witness fees and attorney's fees.  **Texas**

**Business and Commerce Code 302.302(d)**

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Brandon Callier prays for judgment against Defendants as follows:

A.      Leave to amend this Complaint to name additional DOESs as they are identified and to conform to the evidence presented at trial;

B.      A declaration that actions complained of herein by Defendant violate the TCPA and Texas state law;

C.      An injunction enjoining Defendant and their affiliates and agents from engaging in the unlawful conduct set forth herein;

D.      An award of $3000 per call in statutory damages arising from the TCPA intentional violations jointly and severally against the corporation for twenty-seven (27) calls.

E.      An award of $5,000 in statutory damages arising from twenty-seven (27) violations of the Texas Business and Commerce code 302.101.

F.      An award to Mr. Callier of damages, as allowed by law under the TCPA;

G.      An award to Mr. Callier of interest, costs, and attorneys' fees, as allowed by law and equity.

H.      Such further relief as the Court deems necessary, just, and proper.

September 11, 2023,                      Respectfully submitted,

Brandon Callier
Plaintiff, Pro Se
6336 Franklin Trail
El Paso, TX 79912
915-383-4604
Callier74@gmail.com

18